# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff*, | : | |
| v. | : | Civil No. |
| $304,839.27 SEIZED FROM BBVA BUSINESS PREMIUM CHECKING ACCOUNT NUMBER XXXXXX3480 HELD IN THE NAME OF ROCKETSHIP GROUP LLC., | : | |
| $26,886.58 SEIZED FROM BBVA BUSINESS PREMIUM CHECKING ACCOUNT NUMBER XXXXXX8911 HELD IN THE NAME OF KAMAR ENTERPIRISES, LLC, DBA KAMAR, | : | |
| $2,978.36 SEIZED FROM BBVA PREMIUM CHECKING ACCOUNT NUMBER XXXXXX6470 HELD IN THE NAME OF JOSE KAMAR, | : | |
| *Defendants*. | : | |
| [CLAIMANTS:  ROCKETSHIP GROUP, LLC; KAMAR ENTERPRISES, LLC; AND JOSE KAMAR] | : | June 18, 2020 |

### VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil action in rem brought to enforce the provision of 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§

1

801 et seq., and 18 U.S.C. 981(a)(1)(A) for violations of 18 U.S.C. §§ 1956 and 1957.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.  Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendants are:  $304,839.27 seized from BBVA Business Premium Checking Account Number XXXXXX3480 held in the name of Rocketship Group, LLC; $26,886.58 seized from BBVA Business Premium Checking Account Number XXXXXX8911 held in the name of Kamar Enterprises, LLC, DBA Kamar; and $2,978.36 seized from BBVA Premium Checking Account Number XXXXXX6470 held in the name of Jose Kamar. ("Defendant Assets").

4. Rocketship Group, LLC, Kamar Enterprises, LLC, and Jose Kamar have submitted administrative claims of ownership to the Defendant Assets.

## Background of Investigation

5. On June 6, 2019, a cooperating source ("CS") told law enforcement that a narcotics transaction was going to take place that day.  The CS told law enforcement that he/she was a narcotics courier and was delivering narcotics for an individual named Alvaro Fransisco Medina Bettencourt ("Medina").  The CS told law enforcement that he/she had done multiple transports of narcotics for Medina.

6. The CS told law enforcement that he/she was supposed to deliver one kilogram of heroin to an individual named Alex Sabo-Santiago ("Sabo") on behalf of Medina.  Under the direction of law enforcement, the CS had communications with Medina and Sabo about the transaction that would take place in the parking lot of an Autozone in

Hartford, Connecticut.

7. Prior to the scheduled transaction, law enforcement met with the CS at a predetermined location and provided him/her with a sham package that was consistent in size, shape and weight with a kilogram of heroin. Law enforcement then established surveillance in and around the parking lot of the Autozone.

8. Later on June 6, 2019, Sabo told the CS that he would be driving a black Honda Accord to meet with him/her at the Autozone. Law enforcement established surveillance at the Autozone and later observed Sabo parking his Honda Accord at the premises. Law enforcement followed the CS from the predetermined meeting place to the Autozone, where they observed the CS meet with Sabo in the Autozone parking lot.

9. The CS exited his/her vehicle and approached and provided Sabo with the fake kilogram of heroin. Sabo complained to the CS that he was supposed to receive two kilograms of heroin and a quantity of narcotic pills. The CS told Sabo that this was not his/her instruction on the delivery. Sabo then left the Autozone parking lot.

10. Law enforcement then followed Sabo to his residence located on Monroe Street in Hartford, Connecticut. Law enforcement approached Sabo's vehicle and detained him and recovered the sham kilogram of heroin.

11. After being advised of his Miranda rights, Sabo provided law enforcement with written consent to search his residence. During the search, law enforcement discovered 1,019.2 grams of Fentanyl, narcotics cutting agents, narcotics packaging material, and a firearm. Sabo also gave consent to law enforcement to search his two cellular telephones.

12. The consensual search of Sabo's telephones yielded conversations between Sabo and Medina during which they were discussing narcotics and money laundering activities. Specifically, Medina and Sabo referenced Kamar Enterprises as an entity they used to launder narcotics proceeds.

13. Through a variety of investigative means, law enforcement determined that several Bank of America bank accounts were being used by Sabo, Medina and their associates to store and launder narcotics proceeds: Bank of America checking account ending in 5397 held in the name of Kamar Enterprises LLC, DBA Kamar; Bank of America checking account ending 5407 held in the name of Kamar Enterprises, LLC; Bank of America checking account ending 5553 held in the name of Kamar Enterprises, LLC; Bank of America savings account ending 5566 held in the name of Kamar Enterprises, LLC; and Bank of America checking account ending 5419 held in the name of Rocketship Group, LLC (Jose Kamar as signatory).

14. Bank of America subsequently closed these accounts because of suspicious activity, including numerous cash deposits just below the $10,000 threshold that would trigger a Currency Transaction Report with law enforcement.

15. When Kamar, *et al*. received the bank checks from the proceeds of the Bank of America accounts, they opened the Defendant Assets. Law enforcement discovered through further investigation that the BBVA accounts holding the Defendant Assets were further being used to store and launder narcotics proceeds.

16. Based on the above information, it is believed that: $304,839.27 seized from BBVA Business Premium Checking Account Number XXXXXX3480 held in the name of Rocketship Group, LLC; $26,886.58 seized from BBVA Business Premium

Checking Account Number XXXXXX8911 held in the name of Kamar Enterprises, LLC, DBA Kamar; and $2,978.36 seized from BBVA Premium Checking Account Number XXXXXX6470 held in the name of Jose Kamar constitute proceeds from the illegal sale and distribution of narcotics and money laundering and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. §981(a)(1)(A).

WHEREFORE, the United States of America prays that Warrants of Arrest In Rem be issued for: $304,839.27 seized from BBVA Business Premium Checking Account Number XXXXXX3480 held in the name of Rocketship Group, LLC; $26,886.58 seized from BBVA Business Premium Checking Account Number XXXXXX8911 held in the name of Kamar Enterprises, LLC, DBA Kamar; and $2,978.36 seized from BBVA Premium Checking Account Number XXXXXX6470 held in the name of Jose Kamar; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ David C. Nelson*
DAVID C. NELSON
ASSISTANT U.S. ATTORNEY
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL BAR # ct25640
David.C.Nelson@usdoj.gov

## DECLARATION

I am a Task Force Officer for the Drug Enforcement Administration, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of June, 2020.


    */s/ Jeffrey Poulin*
JEFFREY POULIN
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION